# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, | )<br>) |
| Plaintiff, | ) Case No.: 1:16cv276<br>) |
| vs. | ) Judge Michael R. Barrett<br>) |
| CERTIFIED STEEL STUD ASSOCIATION, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

## OPINION AND ORDER

This matter is before the Court on: 1) Evanston's Motion for Summary Judgment (Doc. 40) and the responsive memoranda thereto; and 2) ClarkDietrich's Partial Motion for Summary Judgment (Doc. 67) and the responsive memoranda thereto. In addition, Evanston sought leave to file a corrected reply brief in support of its motion for summary judgment, explaining that it inadvertently failed to attach referenced exhibits (Doc. 89); Evanston's Motion for Leave is **GRANTED**.

### I.  BACKGROUND/FACTS

ClarkWestern Dietrich Building Systems, LLC ("ClarkDietrich") produces steel framing products used in the construction industry. Certified Steel Stud Association ("CSSA") is a trade association. Its founding members, all of whom were defendants in the underlying lawsuit – Ware Industries, Inc. ("Ware"), California Expanded Metal Products Company ("CEMCO") and Telling Industries, LLC ("Telling") – are competitors of ClarkDietrich.

1

In September 2013, CSSA disseminated a publication within the steel framing industry asserting, in part, that ClarkDietrich's EQ-coated product line did not comply with the International Building Code, and that contractors who used ClarkDietrich's products could be liable. (Doc. 40-1, PageID 414-17).

In response to the publication, ClarkDietrich sued CSSA, Ware, CEMCO, and Telling in Butler County, Ohio alleging: 1) violations of the Ohio Deceptive Trade Practices Act ("ODTPA") and unfair competition; 2) defamation; 3) common law disparagement; and 4) civil conspiracy. (Doc. 1-1).

Before closing arguments, ClarkDietrich settled with Ware, CEMCO, and Telling. (Doc. 44-2, PageID 603). In addition, before the case was submitted to the jury, ClarkDietrich offered to dismiss all claims against CSSA, with prejudice and with no payment made by or on behalf of CSSA if CSSA would consent to a stipulated dismissal of ClarkDietrich's claims. (Doc. 40-2, PageID 452). That offer was rejected. (Id). Following the denial of a motion to dismiss pursuant to Ohio Civ.R. 41(A)(2) – a motion CSSA opposed – the matter proceeded to closing arguments and was submitted to the jury. On November 18, 2005, the jury found in favor of ClarkDietrich and against CSSA on all of ClarkDietrich's claims, including civil conspiracy; ClarkDietrich was awarded $49.5 million in damages. (Doc. 1, ¶ 34).

Evanston Insurance brings the instant action pursuant to 28 U.S.C. § 1332 seeking a declaratory judgment against CSSA and ClarkDietrich. Evanston asks the Court to issue a declaratory judgment stating that Evanston has no defense or indemnity obligation under the Evanston-CSSA insurance policy (the "Policy") due to CSSA's breach of the Policy. (Doc. 1, ¶ 59).

Evanston and ClarkDietrich both move for summary judgment. (Docs. 40, 67). Because CSSA's claim is excluded under the Policy, the Court begins and ends its analysis here.

## II. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). These standards upon which the court evaluates motions for summary judgment do not change simply because the parties present cross-motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

## III. ANALYSIS

At the outset, the Court notes that while the parties engage in a choice of law analysis, such an analysis is unnecessary because application of either Ohio law or New York law leads to the same result. *Mecanique C.N.C., Inc. v. Durr Envtl., Inc.*, 304 F. Supp.2d 971, 975 (S.D. Ohio 2004).

The Policy between CSSA and Evanston includes certain exclusions. The policy, in relevant part, does not apply:

> (a) to any claim based upon or arising out of any dishonest, deliberately fraudulent or criminal act, error, omission, personal injury or publishers' liability committed by or at the direction of Insured; however, notwithstanding the foregoing, the Company will provide a defense up to the limit of liability

3

for any such claim without any liability on the part of the Company to pay such sums as the Insured shall become legally obligated to pay as damages.

(Doc. 1-3, PageID 96). In other words, the policy excludes coverage for dishonest or deliberately fraudulent conduct. The policy does not define "dishonest" or "deliberately fraudulent."

Evanston argues the jury's verdict in favor of ClarkDietrich on its civil conspiracy claim falls within the above Policy exclusion and thus, CSSA's claim is not covered under the Policy.

To establish a claim for civil conspiracy, the following elements must be established: 1) malicious combination; 2) of two or more persons; 3) to injure another person or property; and 4) the existence of an unlawful act independent from the actual conspiracy. *Mangelluzzi v. Morley*, 40 N.E.3d 588, 601 (Ohio App. 8 Dist. 2015). The question herein is whether CSSA's participation in a civil conspiracy is "dishonest" or "deliberately fraudulent" in the context of the Policy. Based upon the instructions of law relied upon by the jury in rendering its verdict, the Court must answer in the affirmative.

With respect to the civil conspiracy claim, the trial court instructed the jury as follows:

…plaintiff further alleges the purpose [of the civil conspiracy] was to harm plaintiff's business and to divert sales and profits from plaintiff in violation of the Ohio Deceptive Trade Practices Act/common law unfair competition, common disparagement, and defamation. If you find that plaintiff has proven two or more of the original and remaining defendants (WARE, CEMCO, Telling, CSSA) committed one or more of these unlawful acts according to the instructions I've already given you for each of these claims, then you may consider whether those defendants engaged in a civil conspiracy to carry out that unlawful account.

Before you can find for the plaintiff, you must find by a preponderance of the evidence that defendant CSSA participated in a malicious combination involving two or more persons, including the defendant, a result of which was the commission of a wrongful act that caused injury to plaintiff. For purposes of this instruction, person includes a company or the officers and agents of any of the companies that are named as defendants in this case.

4

> Proof of an underlying unlawful act was committed is required before plaintiff can prevail on its civil conspiracy claim. The unlawful acts plaintiff claims in this case are the dissemination by the defendant of allegedly false or misleading statements as alleged in the Deceptive Trade Practices Act/unfair competition, defamation, and disparagement counts.
>
> You may not find the remaining defendant CSSA liable under the conspiracy count unless you have found one or more of the original or remaining defendants committed the unlawful act as asserted.
>
> * * *
>
> Malicious combination means a common understanding or design, whether spoken or unspoken, entered into with malice by two or more persons to commit a wrongful act. It does not require a showing of express agreement. It is sufficient that the participants, in any manner, reached a mutual understanding to commit a wrongful act. A meeting of the participants is not necessary.
>
> Malice is that state of mind under which a person does a wrongful act intentionally, without a reasonable or lawful excuse, that causes injury.

(Doc. 40-3, PageID 8674-82).

To begin, there can be no question the jury found CSSA's conduct was intentional. Proof of negligence is not sufficient to establish a civil conspiracy claim. Indeed, "malice" cannot be satisfied by proof of negligence because there can be no agreement to commit negligence. *Chesher v. Neyer*, 392 F.Supp.2d 939, 959 (S.D. Ohio 2005). Thus, in finding in favor of ClarkDietrich on its civil conspiracy claim, the jury necessarily determined that CSSA committed unlawful acts "intentionally" and "without a reasonable or lawful excuse."

For the reasons stated more fully herein, the Court concludes that regardless of whether ClarkDietrich's ODTPA, defamation, and disparagement claims individually fall within the Policy's coverage, a favorable jury verdict on the civil conspiracy claim dooms coverage under the Policy entirely. While the Court acknowledges Evanston bears the burden of proving CSSA's claim is excluded, the Court finds Evanston has met its burden, as CSSA's engagement in this particular civil conspiracy constitutes "dishonest" conduct.

5

The Court's conclusion in this case, however, does not render all conduct related to civil conspiracies dishonest or deliberately fraudulent. Indeed, the Court can envision a scenario wherein a civil conspiracy verdict would not be excluded under the Policy. Accordingly, whether CSSA's conduct was dishonest necessitates a review of the unlawful acts the jury determined were part of the civil conspiracy.

The jury identified the unlawful acts as follows: 1) Ohio Deceptive Trade Practices Act/Unfair Competition; 2) Defamation; 3) and Disparagement. (Doc. 40-4, PageID 519). In finding in favor of ClarkDietrich on the above claims, the jury made a number of findings by way of interrogatories. (Doc. 40-4). First, the jury determined that CSSA's publication was a false and misleading statement of fact. (Doc. 40-4, PageID 495). The jury also found that CSSA's publication was false. (Id. at PageID 505). Moreover, the jury found CSSA published the publication with fault amounting to "actual malice."[1] (Id. at PageID 507). Next, the jury found CSSA made a false and disparaging comment by publishing the publication. (Id. at PageId 512). Further still, the jury found CSSA disparaged ClarkDietrich with either knowledge of falsity or with reckless disregard of the truth or falsity of the publication. (Id. at PageID 513). Finally, the jury found by publishing the publication that CSSA acted with the intent to harm ClarkDietrich's interest or with knowledge that harm would inevitably result. (Id. at PageID 514). The question then becomes whether a finding of civil conspiracy renders the above conduct dishonest.

Because "dishonest" is not defined in the policy, the Court gives the word "its usual and ordinary meaning." *Frantz v. Cincinnati Ins. Co.*, Hancock No. 5-90-64, 1991 WL 325570, n.1 (Ohio App. 3d. Dist. Oct. 16, 1991). Webster's New World Dictionary defines "dishonest" as

---

[1] The jury was instructed that "actual malice occurs when a statement is made with either knowledge that it is false or with reckless disregard as to whether it was false or not." (Doc. 40, PageID 473).

6

characterized by lack of truth, honesty, or untrustworthiness, and is synonymous with unfair and deceptive. *Dishonest Definition*, Merriam-Webster.com., https://www.merriam-webster.com/dictionary/dishonest (last visited March 30, 2018).

The undersigned also looks to Ohio courts' interpretation of the word "dishonest." Ohio courts have interpreted dishonesty exclusions in insurance policies to exclude coverage for intentional torts. *See e.g., Loan & Sav. Co. v. Employers' Liab. Assurance Corp.*, 249 F.Supp. 633, 656 (N.D. Ohio 1964) (finding that "[t]o constitute dishonesty, the conduct need not amount to a crime and need only involve bad faith or a want of integrity or untrustworthiness or a disposition to lie or cheat a faithlessness to a trust."). Courts have also equated dishonesty with "moral obliquity or conscious wrongdoing" in the context of bad faith claims. *See e.g., Wasserman v. Buckeye Union Cas. Co.*, 32 Ohio St.2d 69, 70 (Ohio 1972).

Applied to the facts herein, the Court finds the Policy exclusion includes CSSA's unlawful acts in furtherance of the civil conspiracy. While the jury was not required to find CSSA acted with intent in order to find in favor of ClarkDietrich on the ODTPA, defamation, or disparagement claims separately, the jury was required to find intent on the civil conspiracy claim. Imputing intent, then, the jury found CSSA's publication was *intentionally* false and a misleading statement of fact. Such conduct fits within the usual and ordinary meaning of dishonest.

ClarkDietrich argues there would be no point to purchase coverage for unfair competition if the dishonesty exclusion excluded such claims. In that vein, ClarkDietrich asserts the ODTPA claim is indisputably covered under the Policy, as the Policy provides coverage for publisher's liability for making false statements. Thus, if the policy covers the ODTPA claim – a $3.5

million verdict – ClarkDietrich argues the policy limits would be exhausted and the Court need not analyze whether the other claims fall outside the Policy's coverage.

In other words, ClarkDietrich asks the Court to look at each jury verdict individually, arguing the jury awarded separate damages for each claim. Such a practice, however, ignores the fact that Ohio law does not recognize civil conspiracy as an independent cause of action. *Minarik v. Nagy*, 8 Ohio App.2d 194, 195 (Ohio App. 8th Dist. 1963). Thus, the undersigned must consider the underlying unlawful acts committed by CSSA in furtherance of the civil conspiracy. Accordingly, ClarkDietrich's argument is without merit.

## IV.     CONCLUSION

Considering the foregoing, the Court finds CSSA's claim is not covered under the Evanston policy. Evanston is therefore entitled to summary judgment in its favor. Accordingly, Evanston's Motion for Summary Judgment (Doc. 40) is **GRANTED**. ClarkDietrich's Motion for Partial Summary Judgment (Doc. 67) is **DENIED**.

**IT IS SO ORDERED.**

    *s/Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court